**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| YAKAR TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:25-CV-00665-JRG-RSP |
| | § | |
| SHENZHEN XIANGDANGWEN TECHNOLOGY CO., LTD., | § | |
| | § | |
| | § | |
| Defendant. | § | |

**CLAIM CONSTRUCTION ORDER**

Before the Court is Plaintiff's Opening Claim Construction Brief (Dkt. No. 31) filed by Yakar Technologies, LLC. Also before the Court is Defendant's Responsive Claim Construction Brief (Dkt. No. 33) filed by Shenzhen Xiangdangwen Technology Co., Ltd., (under the name "LISEN")b, along with Plaintiff's Reply Claim Construction Brief (Dkt. No. 35).

The Court held a hearing on October 26, 2026. Having considered the parties' briefing, submitted evidence, and heard arguments from counsel, the Court resolves the disputes as ordered herein.

## I. BACKGROUND

Plaintiff alleges infringement of three patents relating to cell phone mounts: U.S. Patent 9,845,058, U.S. Patent 11,034,309, and U.S. Patent 11,502,536 (collectively, "the Asserted Patents"). The '058 Patent and '309 Patent are related and both titled "Heavy Duty Magnet Mount." They share a common Abstract, which sets forth as follows:

> A mount for an electronic device includes a ferromagnetic element securable to the electronic device, and a mount body including a face plate and at least one leg, the

> magnet secured in the face plate, and the at least one leg movable from a stored position to a support position. The stored position is flush with the face plate, and the support position is normal to the face plate. The magnet and ferromagnetic element combine with the leg in it[s] support position to allow reliable mounting of heavy and/or oversized electronic devices.

The '536 Patent is titled "Wireless charging mount," and its Abstract states as follows:

> A mobile device mounting template includes at least one ferromagnetic strip, and a base sheet to which the at least one ferromagnetic strip is releasably affixed. The base sheet includes a template sheet and a release liner, the template sheet having markings thereon for positioning the device mounting template on a mobile device, and the release liner being removably releasable from the template sheet. A method of mounting a ferromagnetic strip to a mobile device includes positioning a template having the ferromagnetic strip removably attached thereto so that the ferromagnetic strip is exposed, positioning the ferromagnetic strip on a mobile device using a template alignment line on the template, adhering the ferromagnetic strip to the mobile device with an adhesive on the ferromagnetic strip, and removing the template.

## II. LEGAL STANDARDS

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure-Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "[T]he court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*); *aff'g,* 517 U.S. 370, 390 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which

explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

When construing claims, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1312–13). Courts must therefore "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.,* as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

There are, however, two exceptions to this rule. The first exception is when a patentee sets out a definition and acts as his own lexicographer. The second exception is when the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996).

The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). Although the specification may indicate that certain embodiments

are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

But "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004). A disavowal or disclaimer must be clear and unmistakable. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012).

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v.*

*Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

Intrinsic evidence, therefore, is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). But for claim terms with less-apparent meanings, courts consider " 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean[,] [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). In those situations, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 320 (2015) (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.*

However, the intrinsic record may not be sacrificed in favor of extrinsic evidence. According to *Phillips*, reliance on dictionary definitions, for example at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321.

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled

in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* The claims "must be precise enough to afford clear notice of what is claimed," but that consideration must be made while accounting for the inherent limitations of language. *Id.* at 909. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. AGREED TERMS

The parties submitted the following agreed constructions in their Joint Claim Construction and Prehearing Statement Pursuant to Patent Rule 4-3 (Dkt. No. 24-1) and the Courts adopts them herein as follows:

| Claim Term | Agreed Construction |
|---|---|
| "markings"<br>('536 Patent, Claim 1) | Plain and ordinary meaning |
| "removing the template"<br>('536 Patent, Claim 12) | Plain and ordinary meaning |

## IV. DISPUTED TERMS

### 1. "leg"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "leg"<br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "an elongated, narrow part that serves as a support or prop for an object" |

Prior to the *Markman* hearing, the Court issued a set of preliminary constructions for the disputed claim terms. The preliminary construction for "leg" was to adopt its plain and ordinary meaning. At the hearing, Defendant stated it does not dispute that construction. **The Court therefore adopts its preliminary construction and finds "leg" should be given its plain and ordinary meaning.**

### 2. "leg extensions," "rotatably mounted"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "leg extensions"<br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "a section that attaches to and forms an additional portion of the leg, which, as one of a pair, is rotatable relative to the leg to project from the leg and form the support for the electronic device" |
| "rotatably mounted"<br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "attached or affixed in a manner that allows rotation"<br>***In the alternative:*** LISEN accepts the plain and ordinary meaning of "rotatably mounted" if "leg extensions" is properly construed. |

The Court's preliminary construction for "leg extensions" and "rotatably mounted" was to adopt their plain and ordinary meanings. At the hearing, Defendant stated it does not dispute these

constructions. **The Court therefore adopts its preliminary constructions and finds "leg extensions" and "rotatably mounted" should be given their plain and ordinary meanings.**

**3. "stored position," "support position"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "stored position"<br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "the position in which the leg is folded flush and substantially coplanar with the face plate" |
| "support position"<br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "the position in which the leg extends substantially normal (perpendicular) to the face plate, providing additional support to the electronic device" |

The Court's preliminary construction for "stored position" and "support position" adopted their plain and ordinary meanings. At the hearing, Defendant stated it does not dispute the construction for "support position." Defendant does, however, dispute the construction for "stored position." The Court thus provides its analysis for the construction of "stored position" as follows.

The term "stored position" appears in Claim 1 of the '058 Patent and Claim 3 of the '309 Patent. The parties disagree whether the stored position must take the geometry of the preferred embodiment, in which the leg is folded flush and sits substantially coplanar with the face plate, or whether the term carries its plain and ordinary meaning.

Defendant's proposal relies on the written description of the stored position as where the "individual legs 104A and 104B fold flush to front plate 108 into openings 124A and 124B, respectively, and are in the stored position substantially coplanar with the face plate 102." ('058 Patent, col. 3:42–47.) Defendant further argues that during *ex parte* reexamination of the '058 Patent, the Patent Owner emphasized the narrowness of the claims by distinguishing prior art

having legs that are stored parallel to the faceplate as not being coplanar. At the *Markman* hearing, Defendant pointed to the reexamination record as evidence that legs in the "stored position" must be coplanar with the faceplate.

Plaintiff disagrees that a clear disclaimer exists in the record. Instead, Plaintiff argues that the claim language uses "stored position" and "support position" relationally in a way that a skilled artisan can easily understand. Plaintiff argues that the reexamination statements Defendant relies upon were made with respect to an unasserted dependent claim that expressly required coplanarity, and that such a limitation should not imported to the independent claim. The Court agrees.

Turning first to the claim language, Claim 1 of the '058 Patent recites as follows, with the disputed term in bold:

> 1. A mount for an electronic device, comprising:
>
> a ferromagnetic element securable to the electronic device; and
>
> a mount body, the mount body comprising a magnet, a face plate, and at least one leg, the magnet secured in the face plate, and the at least one leg movable with respect to the mount body from a **stored position** to a support position;
>
> wherein the at least one leg further comprises a pair of leg extensions rotatably mounted to the leg, the pair of leg extensions rotatable between the first position and the second position to form a support for the electronic device.

Claim 3 of the '309 Patent mirrors the same "stored position" limitation. As shown, the claims identify the stored position by its role in the claimed movement of a leg attached to a mount body where the leg is either stored away or moved into a supportive position to support an electronic device. The stored and support positions are different locations of the leg in relation to the mount body. Nothing in the claim language requires the positions to be a specific configuration or geometry, such as where the leg is folded, lies flush with any surface, or where it is coplanar with the

face plate. Indeed, Defendant already agrees that "support position" has a clear plain and ordinary meaning not limited to an express geometry. "Stored position" should be no less understandable.

The specification contains no strict requirements for the meaning of "stored position." Defendant's proposed construction is drawn from a single passage: "In the stored position, individual legs 104A and 104B fold flush to front plate 108 into openings 124A and 124B, respectively, and are in the stored position substantially coplanar with the face plate 102." ('058 Patent, col. 3:42–46.) That passage, however, opens with "Referring specifically to FIG. 4, an exploded view of a mount body 100 is shown" (*id.*, col. 3:35–36), and describes the preferred embodiment depicted in the figures. The same passage describes variations that can exist within that embodiment: "Legs 104 are rotatable from a stored position as shown in FIG. 1, where individual legs 104A and 104B, in one embodiment formed in a unitary body rotatable together, but in another embodiment individually rotatable, are rotatable to a supporting position as shown in FIGS. 4, 17, and 18." (*Id.*, col. 3:37–42.) Thus, nothing in the specification defines the stored position by a particular geometry or disclaims other configurations of a leg from being in a stored position. Absent lexicography or disavowal, the Court will not import the features of a disclosed embodiment into the claims. *See Thorner*, 669 F.3d at 1365–66. The Court finds no lexicography to be present here.

Similarly, the Court does not find a clear and unmistakable disavowal in the intrinsic evidence. The reexamination record simply does not support Defendant's construction. Each of the Patent Owner statements on which Defendant relies addresses Claim 4 of the '058 Patent (which depends from Claim 1 through Claim 3) and its expressly written requirement that the leg be "extendible from the mount body in a direction **coplanar** with the face plate" (emphasis added). In distinguishing Xu, the Patent Owner was clearly referring to Claim 4 in stating that "the at least one leg will never be coplanar with the face plate of the mount body, it can only [*sic*] parallel with

the face plate at most." (Dkt. No. 33-9 at 14.) The Patent Owner made the same argument as to Mersky with respect to Claim 4. (*Id.* at 21.) And in addressing Wang, the Patent Owner explained Claim 4's coplanar limitation by reference to the specification, observing that "in the stored position, legs 104A and 104B substantially coplanar with the face plate 102." (*Id.* at 28–29.) Each of these statements are in passages titled "claims 3 and 4" or "claims 2 to 4" and expound on a limitation that Claim 4 expressly recites. None are made in reference to Claim 1. Accordingly, they cannot be a clear and unmistakable disavowal as to independent Claim 1 (upon which Claim 4 depends) because it contains no such limitation. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325–26 (Fed. Cir. 2003). If anything, these statements confirm that coplanarity is an added limitation of Claim 4 that narrows from Claim 1. Indeed, when asked at the hearing why a limitation from a dependent claim that does not appear in the independent claim should be imported into the construction of a term in Claim 1, Defendant offered no response.

**The Court therefore finds "stored position" and "support position" should both be given their plain and ordinary meanings.**

**4. "first position," "second position"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "first position"<br><br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "the position in which the leg extension is substantially coplanar with the face plate and adjacent the housing" |
| "second position"<br><br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "the position in which the leg extension is substantially perpendicular (normal) to the face plate, separated from the housing, and forms a support for the electronic device" |

The Court's preliminary construction for "first position" and "second position" was to clarify that they are "different positions along a rotational axis." At the hearing, Plaintiff and Defendant both stated on the record that they agree with this construction. **The Court therefore adopts its preliminary constructions and hereby construes "first position" and "second position" to mean "different positions along a rotational axis."**

**5. "support," "directly support"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "support"<br>('058 Patent, Claim 1)<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "a physical structure, formed by the pair of leg extensions, that directly contacts and bears the weight of the electronic device" |
| "directly support"<br>('309 Patent, Claim 3) | Plain and ordinary meaning | "to support the device through immediate physical contact, without any intervening element" |

The Court's preliminary construction for "support" was to adopt its plain and ordinary meaning and for "directly support" was to "be in physical contact with and support." At the hearing, Plaintiff and Defendant both stated on the record that they agree with these constructions. **The Court therefore adopts its preliminary constructions and finds "support" should be given its plain and ordinary meaning. The Court further construes "directly support" to mean "be in physical contact with and support."**

### 6. The "Laminate" Terms

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "base sheet"<br>('536 Patent, Claims 1, 12) | Plain and ordinary meaning | "a single, integrated sheet to which the at least one ferro-magnetic strip is releasably affixed, the sheet being made up of both a template sheet and a release liner" |
| "template sheet"<br>('536 Patent, Claims 1, 12) | Plain and ordinary meaning | "the sheet that forms part of the base sheet and that bears the markings used for positioning the mounting template on the mobile device" |
| "release liner"<br>('536 Patent, Claims 1, 12) | Plain and ordinary meaning | "a removable protective film or sheet, coated with a release agent, that covers and protects the adhesive until the template is to be used and that is peeled away before the strip is applied to the mobile device"<br>*In the alternative:*<br>"release liner" means "a removable protective film or sheet that covers and protects the adhesive until the template is to be used and that is peeled away before the strip is applied to the mobile device" |
| "releasably affixed"<br>('536 Patent, Claim 1) | Plain and ordinary meaning | "physically fastened, attached, or stuck to the base sheet in a manner that allows it to be released or removed from the base sheet" |

| | | |
|---|---|---|
| "removably releasable from the template sheet"<br>('536 Patent, Claim 1) | Plain and ordinary meaning | "capable of being released and removed (peeled away) from the template sheet" |
| "removably attached thereto"<br>('536 Patent, Claim 12) | Plain and ordinary meaning | "fastened or connected to the template sheet in a manner that allows it to be removed"<br>*In the alternative:*<br>Should the Court find "releasably affixed," "removably releasable" and "removably attached" coextensive, LISEN has no objection to one construction for all three as "physically attached in a manner that allows the attachment to be undone" |

The Court's preliminary constructions for "base sheet" and "template sheet" was to adopt their plain and ordinary meanings. The Court's preliminary construction for "release liner" was "a removable protective film." And the Court's preliminary constructions for "releasably affixed," "removably releasable from the template sheet," and "removably attached thereto" was "physically attached in a way that can be easily released."

At the hearing, Plaintiff and Defendant both stated on the record that they agree with these constructions. **The Court therefore adopts its preliminary constructions and finds "base sheet" and "template sheet" should be given their plain and ordinary meanings. The Court construes "release liner" to mean "a removable protective film," and further construes "releasably affixed," "removably releasable from the template sheet," and "removably attached thereto" to mean "physically attached in a way that can be easily released."**

**7. "ferromagnetic strip"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "ferromagnetic strip"<br>('536 Patent, Claims 1, 12) | Plain and ordinary meaning | "a long, narrow (elongated) piece of ferromagnetic material, i.e., a material such as iron, nickel, or cobalt or their alloys, that has high magnetic permeability and appreciable residual magnetism and is thereby attracted to a magnet" |

The Court's preliminary construction for "ferromagnetic strip" was "a strip of ferromagnetic material having an elongated shape." At the hearing, Plaintiff and Defendant both stated on the record that they agree with this construction. **The Court therefore adopts its preliminary construction and hereby construes "ferromagnetic strip" to mean "a strip of ferromagnetic material having an elongated shape."**

## V. CONCLUSION

The Court adopts the constructions as set forth in this opinion for the disputed terms of the Asserted Patents.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 2nd day of November, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE